IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 17-00301 SOM (1) |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION FOR COMPASSIONATE |
| | ) | RELEASE |
| | ) | |
| vs. | ) | |
| | ) | |
| PABLO M. RIVERA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**I.      INTRODUCTION.**

Defendant Pablo M. Rivera defrauded the University of the Nations/Youth with a Mission ("UON") of more than $3 million. In 2018, after pleading guilty to wire fraud in violation of 18 U.S.C. § 1343, he was sentenced to 115 months in prison, 3 years of supervised release, and a $100 special assessment.

Rivera is incarcerated in a satellite camp at Federal Medical Center ("FMC") Devens in Massachusetts and has served 2.5 years of his 115-month sentence.  His projected release date (taking anticipated good time credit into account) is January 27, 2026.

Rivera moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  His request is based on medical conditions making him susceptible to severe complications from the COVID-19 virus.  He is 44, obese, and has hyperlipidemia, hypertension,

and asthma, as well as other medical conditions not relevant to this motion.  This court denies the motion, as Rivera fails to demonstrate extraordinary and compelling circumstances justifying a reduction of his sentence of incarceration.

**II.      BACKGROUND.**

Rivera entered a plea of guilty to Count I of the Information (wire fraud in violation of 18 U.S.C. § 1343).  *See* ECF No. 33 (Minutes of Guilty Plea before Magistrate Judge); 37 (Memorandum of Plea Agreement).  Pursuant to a Report and Recommendation of the Magistrate Judge, this judge accepted the guilty plea.  *See* ECF No. 40.  In the Memorandum of Plea Agreement, Rivera agreed and admitted that, from July 2014 through January 2017, he knowingly devised and intended to devise a scheme or artifice to defraud the UON of $3,096,241 through interstate emails.  *See* ECF No. 37, PageID #s 117-19.

According to Rivera's Presentence Investigation Report, he had no previous convictions.  *See* Presentence Investigation Report, ECF No. 61, PageID #s 604-05.

In January 2018, this court sentenced Rivera to a term of 115 months in prison, 3 years of supervised release, and a special assessment of $100.  *See* Judgment in a Criminal Case, ECF No. 95.  He was also ordered to forfeit certain property.  *See* ECF Nos. 90, 115.

Two and a half years later, Rivera, now 44, is at a

satellite camp at FMC Devens in Massachusetts, with a projected
release date of January 27, 2026.  *See*
https://www.bop.gov/inmateloc/ (input Inmate Number 05914-122)
(last visited June 30, 2020); ECF No. 120-5, PageID # 1431 (email
describing the camp).  Rivera says that he is a model inmate with
no disciplinary issues.  *See* ECF No. 120-12.

FMC Devens has 923 inmates, with 840 at the FMC, and 83
at the adjacent camp.  *See* https://www.bop.gov/locations/
institutions/dev/ (FMC Devens information) (last visited June 30,
2020).  As of the morning of June 30, 2020, FMC Devens had 14
inmates and 1 staff member with active COVID-19, 39 inmates and 5
staff members who had recovered from COVID-19, and two inmates
who had died of it.  *See* https://www.bop.gov/coronavirus/ (last
visited June 30, 2020).

The record includes a description of conditions at the
camp:

> Inside the camp it is impossible to social
> distance.  The facility is too small to
> comply with social distancing with the amount
> of inmates.  a) There are 10 sinks and 10
> toilets and 16 showers (usually only 12 are
> functional) for all 90 inmates.  The showers
> are utilized at least 8-10 times a day each
> while only deep cleaned once.  b) The eating
> arrangements are not practical as they may
> seem.  There are taped off spaces in the
> hallway, only 17 marked spaces and more than
> 17 people in line.  There are only six tables
> each with 12 seats (6 on each side).  The
> tables are oval shaped with the two center
> seats on each side being approximately 3 feet
> across from each other and four other seats

3

> being 1.5 feet across, with the table being
> approximately 8 feet long.  This
> configuration could only allow social
> distance with approximately 3 inmates per
> table.  c) There are 4 phones and four
> computers available for all inmates to use.

ECF No. 120-5, PageID # 1431.  According to Rivera, "Devens has not been keeping the soap and hand sanitizer filled." *Id.*

Rivera says he has a number of medical conditions that make him susceptible to severe complications from COVID-19, particularly hyperlipidemia, hypertension, asthma, and obesity. *See* ECF No. 120-1, PageID #s 1392, 1410, 126-4.  His sealed medical records support his report of those conditions, although they are not clear as to the severity of all of them.  Rivera is a Care Level 1 inmate.  *See* ECF No. 123, 127.  The BOP classifies "Care Level 1" inmates as those who "are less than 70 years of age and are generally healthy," but "may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months."  https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited June 30, 2020).

Rivera says that, if released, he will live with his parents in East Haven, Connecticut.  Rivera says he is an electrical apprentice who can work full-time as an electrician. *See* ECF No. 120-5, PageID # 1431.

II.        **ANALYSIS.**

Rivera's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements. *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

>           **A.    Rivera Has Satisfied the Exhaustion Requirement of
>                   18 U.S.C. § 3582(c)(1)(A).**

On or about April 22, 2020, the warden of FMC Devens

denied Rivera's April 17, 2020, administrative compassionate

release request.  *See* ECF No. 120-3, PageID # 1427.  Rivera's

motion was also filed more than 30 days after he sought

administrative relief.  There is no dispute that Rivera has

satisfied the exhaustion requirement of 18 U.S.C.

§ 3582(c)(1)(A).  *See* Opposition, ECF No. 125, PageID # 1831.

>           **B.    Rivera Fails to Demonstrate Extraordinary and
>                   Compelling Circumstances Justifying His Early
>                   Release.**

This court turns to § 3582(c)(1)(A)'s second

requirement: whether extraordinary and compelling reasons warrant

a sentence reduction.  In orders addressing compassionate release

motions in other cases, this court has expressly recognized that

it possesses considerable discretion in determining whether a

particular defendant has established the existence of

extraordinary and compelling reasons that justify early release.

This court has ruled that it reads § 3582(c)(1)(A) as allowing

this court considerable discretion, notwithstanding the absence

of an amended policy statement from the Sentencing Commission

reflecting the discretion now given to courts under that statute.

*See United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June

10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D.

Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at

*3 (D. Haw. May 29, 2020).

The CDC currently lists the following conditions as putting people at increased risk of a severe illness from COVID-19:

*Chronic kidney disease

*COPD (chronic obstructive pulmonary disease)

*Immunocompromised state (weakened immune system) from solid organ transplant

*Obesity (body mass index [BMI] of 30 or higher)

*Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies

*Sickle cell disease

*Type 2 diabetes mellitus

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited June 29, 2020).

The CDC also lists the following as increasing the risk of a severe illness from COVID-19:

*Asthma (moderate-to-severe)

*Cerebrovascular disease (affects blood vessels and blood supply to the brain)

*Cystic fibrosis

*Hypertension or high blood pressure

*Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines

7

> *Neurologic conditions, such as dementia
>
> *Liver disease
>
> *Pregnancy
>
> *Pulmonary fibrosis (having damaged or scarred lung tissues)
>
> *Smoking
>
> *Thalassemia (a type of blood disorder)
>
> *Type 1 diabetes mellitus

*Id.*

Under the CDC's guidance, Rivera's obesity (BMI of more than 30) puts him at increased risk of complications if he contracts COVID-19.  The court notes that these guidelines have changed since the filing of the motion and opposition and now include obesity (BMI of more than 30) instead of only morbid obesity (BMI of more than 40) as putting an individual at higher risk.  Additionally, Rivera's hypertension might put him at increased risk for a severe illness from COVID-19.  *Id.*  Whether Rivera's unspecified asthma is moderate or severe, putting him at higher risk of severe complications from COVID-19, is not entirely clear from his medical records.  He has hyperlipidemia, but the CDC does not list hyperlipidemia as increasing the risk of a severe illness from COVID-19.

While Rivera has demonstrated that he does have one or more medical conditions that put him at higher risk of severe

8

complications from COVID-19, this court must still consider the factors set forth in section 3553(a) before reducing his sentence.  That section requires the court to impose a "sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" below:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
>     (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant

to section 994(a)(3) of title 28, United
States Code, taking into account any
amendments made to such guidelines or policy
statements by act of Congress (regardless of
whether such amendments have yet to be
incorporated by the Sentencing Commission
into amendments issued under section 994(p)
of title 28);

(5) any pertinent policy statement--
    (A) issued by the Sentencing Commission
pursuant to section 994(a)(2) of title 28,
United States Code, subject to any amendments
made to such policy statement by act of
Congress (regardless of whether such
amendments have yet to be incorporated by the
Sentencing Commission into amendments issued
under section 994(p) of title 28); and
    (B) that, except as provided in section
3742(g), is in effect on the date the
defendant is sentenced.

(6) the need to avoid unwarranted sentence
disparities among defendants with similar
records who have been found guilty of similar
conduct; and

(7) the need to provide restitution to any
victims of the offense.

18 U.S.C.A. § 3553(a).

The record indicates that Rivera is a nonviolent

offender.  However, Rivera defrauded the UON of more than $3

million, and this court's sentence took the severity of that

crime into consideration when it set 115 months of imprisonment

as an appropriate sentence.  Rivera's crime was not a single

opportunistic action.  Rivera was the university's chief

financial officer.  Over a significant period of time, he wrote

scores of checks to himself, created a fraudulent spreadsheet in

an attempt to hide his crime, and falsely inflated invoices from

others.  With the proceeds of his crime, he bought residences,
jewelry, a gold mine in Africa, and other luxury items.  He paid
thousands of dollars for spa treatments.  Uncovering his crime
was difficult, as he did not promptly admit to any wrongdoing
when questioned.  Instead, in an apparent attempt to gain
sympathy, he falsely claimed that his wife had breast cancer.
Then, approaching sentencing, Rivera submitted to the court a
materially altered email purporting to show that he was not
hiding assets.

Given not just the nature of the crime but also the
manner in which it was committed and Rivera's concerted efforts
to avoid facing any consequences, the court cannot say that,
under the circumstances, Rivera has served a prison sentence that
is sufficient

> (A) to reflect the seriousness of the
> offense, to promote respect for the law, and
> to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to
> criminal conduct; [and]
>
> (C) to protect the public from further
> crimes of the defendant.

18 U.S.C. § 3553(a)(2).

Although the time Rivera has served has been without
disciplinary issues, it does not appear to this court that, if
released now, Rivera will have paid his substantial debt to
society, that his sentence would be an adequate deterrence to
fraudulent conduct, and that he no longer poses a danger to the

community.

If released, Rivera says he plans to live with his parents in Connecticut, where he hopes to find work as an electrician.  While the court could ask for more detail to flush out this vague release plan, it does not do so in light of the factors indicating that Rivera should not be released early.

Rivera is being housed at a facility that, as of June 30, 2020, had had 39 inmates and 5 staff members recover from COVID-19 and two inmates die of it.  FMC Devens now has 14 inmates and 1 staff member with active COVID-19.  Given Rivera's incarceration at the adjacent prison camp, where social distancing is difficult, he is undoubtedly at risk of exposure to COVID-19.  However, two factors mitigate that risk.  First, the camp Rivera is at is attached to a medical facility, meaning that care should be readily available.  Second, the Government submits a declaration from a Bureau of Prisons doctor who says that, in late May 2020, all inmates at FMC Devens were tested and there have been no COVID-19 cases at the camp that Rivera is assigned to.  (Although the set up at the camp is far from ideal for purposes of protecting against the coronavirus, the camp is not at capacity, being instead about two-thirds occupied.)

Having balanced the seriousness of Rivera's crime, his medical conditions, the circumstances in which he is housed, the amount of time remaining on his sentence, the danger he poses to the community if released, and his behavior while incarcerated,

this court determines that Rivera has not shown extraordinary and compelling reasons warranting early release.

**III.      CONCLUSION.**

Rivera's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.


It is so ordered.

DATED: Honolulu, Hawaii, June 30, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge


*United States v. Rivera*, Cr. No. 17-301 SOM; ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE